HOWARD (McCORMICK v.). See Case No. 8,719.

HOWARD (MELLUS v.). See Case No. 9,-403.

## Case No. 6,761.

HOWARD v. MILWAUKEE & ST. P. RY. CO.

[7 Biss. 73.] 1

Circuit Court, E. D. Wisconsin. Oct., 1875. 2

LIEN OF JUDGMENT—PRIORITY.

1. A judgment prior in point of time is paramount to a posterior judgment, even though the latter be first enforced, and the former is enforced by a bill in equity to which the owner of the second judgment is not made a party.

[See note at end of case.]

2. It seems, however, that in such case a court of equity would allow the junior judgment creditor to redeem even after the statutory period for redemption had expired.

[See note at end of case.]

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2 [Affirmed in 101 U. S. 837.]

The plaintiff [Charles Howard] sought to recover from the defendant [the Milwaukee & St. Paul Railway Company] the possession of a strip of land about eighty feet in width, occupied by defendant as a road-bed and right of way for its railroad, and extending from the south end of block 41, in the second ward of the city of Milwaukee, to a point where the same crosses the west line of the town of Granville, in Milwaukee county. On the 1st of May, 1858, Sebre Howard obtained a judgment against the La Crosse & Milwaukee Railroad Company, in the circuit court of Milwaukee county, for $25,586.78. On the 29th of October, 1858, execution was issued upon this judgment, and on the 15th of January, 1859, the sheriff of Milwaukee county sold the property before mentioned, upon the execution, as the property of the judgment debtor, to the plaintiff for $4,000, and by deed dated 13th June, 1862, conveyed the property to the purchaser. Before the issuing of this execution the judgment had been assigned to the plaintiff, and the sheriff's deed was recorded November 20th, 1863. It was under this proceeding that the plaintiff claimed title. There were liens upon the property by mortgage and judgment prior in date to plaintiff's judgment, among which were a mortgage executed 17th of August, 1857, by the La Crosse & Milwaukee Company to Bronson and Soutter, to secure the payment of $1,000,000, and a judgment in favor of Newcomb Cleveland rendered October 7, 1857, by the United States district court for the district of Wisconsin, for $111,-727.71 damages and $544.15 costs, which judgment was docketed on that day. On the 21st day of June, 1858, the La Crosse & Milwaukee Railroad Company executed a mortgage upon its railroad and property, to secure the payment of $2,000,000 of bonds, and on the 11th of August, 1858, made to the same party a supplemental mortgage further securing the payment of the same bonds. The first installment of interest upon that mortgage fell due January 1, 1859. The mortgage was subsequently foreclosed by advertisement, and on the 21st of May, 1859, all the property, franchises and rights of the mortgagor were sold under the mortgage, and bid off by Barnes in trust for the bondholders. On the 23d of May, 1859, Barnes and the bondholders in interest united as purchasers of the property in organizing a corporation under the statutes of Wisconsin, which received the name of the Milwaukee & Minnesota Railroad Company, and the rights and interests, whatever they were, acquired by Barnes and the bondholders, were transferred to the Milwaukee & Minnesota Railroad Company. On the 9th of December, 1859, Bronson and Soutter filed a bill in the district court of the United States for the district of Wisconsin, to foreclose the $1,000,000 mortgage, which covered the line of road from Milwaukee to Portage City. The La Crosse & Milwaukee Railroad Company, the Milwaukee & Min-

nesota Railroad Company, Sebre Howard, Charles Howard the plaintiff here, and others, were made defendants in that action. Sebre Howard answered the bill, setting up his judgment and contesting the mortgage. It is unnecessary here to trace the steps of that litigation further than to say that it culminated in a decree of sale, with an order that in case the Milwaukee & Minnesota Company should, before sale, pay into court certain sums amounting in all to about $468,000, it should be let into possession of the road, rolling stock and other property of the La Crosse Company, from Milwaukee to Portage, subject to prior liens. On the 4th of January, 1866, pursuant to that order, the Milwaukee & Minnesota Company paid that sum into court, and on the 9th of January, 1866, took possession of the property, and managed and operated it from that time until the 6th of March, 1867. In April, 1863, Frederick P. James and others, judgment creditors of the La Crosse & Milwaukee Railroad Company, filed in this court a bill against the Milwaukee & Minnesota Railroad Company, the La Crosse Company and Selah Chamberlin, which prayed among other things that the sale under the Barnes mortgage might be decreed fraudulent and void, and the Milwaukee & Minnesota Company be decreed to take nothing under that sale, and that that company be enjoined from taking possession of or exercising any control over the property and franchises mentioned in that mortgage, or from interfering in any manner with the road or its franchises, or the management thereof. That bill was dismissed by this court July 17, 1865, but on appeal to the supreme court of the United States the decree of dismissal was reversed [James v. Railroad Co., 6 Wall. (73 U. S.) 752], and in obedience to the mandate of the supreme court, on the 9th of July, 1868, a final decree was rendered in that cause, by which it was decreed that the foreclosure and sale of the Barnes mortgage be set aside and annulled as fraudulent, and the Milwaukee & Minnesota Company was perpetually enjoined from setting up any right or title under it to the railroad and other property sold under that mortgage, and the Barnes mortgage was decreed to remain only as security for the bonds issued under it in the hands of bona fide holders for value without notice. The decree also contained an order of sale of the railroad and property, but no sale was ever made under that decree. On the 18th of April, 1866, Frederick P. James, assignee of the Cleveland judgment, filed his bill in this court against the Milwaukee & Minnesota Railroad Company, to enforce the lien of that judgment, and to have the property covered by the lien sold. The bill in that case set out the judgment, also the mortgage to Barnes, and the creation of the Milwaukee & Minnesota Company, alleging that mortgage to have been fraudulent, and that the Milwaukee & Minnesota Company were hold-

ing the property in fraud of the rights of creditors of the La Crosse & Milwaukee Company, and prayed a sale of the property for the satisfaction of the Cleveland judgment, subject to certain prior liens and incumbrances. On the 11th of January, 1867, a decree was entered in said cause by which it was adjudged and decreed that there was due to James upon the Cleveland judgment $98,801.51, and that the same was a lien and incumbrance as of date of October 7, 1857, upon all the right, title and interest which the La Crosse & Milwaukee Railroad Company had in and to the property situated between Milwaukee and Portage City. The decree provided for a sale of all the railroad formerly known as the La Crosse & Milwaukee Railroad, from Milwaukee to Portage, then in the possession of the Milwaukee & Minnesota Company, and that that Company and all persons claiming under it be barred from all equity of redemption. This decree also contained the recital that the La Crosse & Milwaukee Company had ceased to exist as a corporation, and that the Milwaukee & Minnesota Company had succeeded to its property subject to liens and incumbrances thereon. On the 2d of March, 1867, pursuant to this decree, a sale was made by the marshal to the defendant, for $100,920.94. On the 5th of March, 1867, this sale was confirmed by the court and a marshal's deed executed. On the 6th of March of the same year, on demand, the Milwaukee & Minnesota Company surrendered possession to the defendant as purchaser of the property, and the defendant has since claimed to be the owner of the property and has been in possession.

Finches, Lynde & Miller, for plaintiff.
John W. Cary, for defendant.

DYER, District Judge. The mortgage from the Milwaukee & La Crosse Company to Barnes was posterior to the plaintiff's judgment. The sale by advertisement under that mortgage left the plaintiff's judgment and the sale thereunder unaffected as to priority and as to rights accruing from priority. Indeed I do not see that the record of the Barnes mortgage and foreclosure is at all material here as an aid to the defendant's alleged title, except to show the origin of the corporation known as the Milwaukee & Minnesota Company.

Although a bill was filed to foreclose the Bronson and Soutter mortgage, there was no sale upon that mortgage. The result of that proceeding, if I correctly understand the record, was to vest in the Milwaukee & Minnesota Company the possession of the railroad and property. By payment of the $468,000 as permitted by the court, it acquired the right of possession and the possession in fact of the mortgaged property. To this extent at least it stepped into the place of the mortgagor and owner of the equity of redemption. But this possession and interest

of the Milwaukee & Minnesota Company were all the time subordinate to prior liens and interests, among which were the plaintiff's judgment and sale.

This proceeding under the Bronson and Soutter mortgage, did not therefore affect the plaintiff's interest, as it would have done had there been a sale thereunder, and its materiality, so far as the defendant's claim of title is concerned, is not apparent except as showing the relation of the Milwaukee & Minnesota Company to the property in question.

The judgment which is the basis of the plaintiff's claim of title was docketed May 1, 1858. The judgment upon which the defendant rests its assertion of title, was docketed October 7, 1857. The Howard judgment under which the plaintiff claims, was therefore posterior in date and docketing, to the Cleveland judgment under which the defendant claims. The plaintiff then is asserting superior title, under a judgment subordinate in rank as to date of recovery to the judgment upon which the defendant's rights depend. The plaintiff's title springs from a sale of the property upon an execution issued upon the Howard judgment. The defendant's title springs from a sale under a decree rendered upon a bill filed to enforce the Cleveland judgment, to which bill, the Milwaukee & Minnesota Company was sole defendant as the party in possession of the railroad and property, and to which bill and the decree so rendered, neither the La Crosse & Milwaukee Company nor the plaintiff was a party. As to the question of paramount title, this is the gist of the controversy; and it seems to lie within small compass. The sale to the plaintiff upon his judgment took place January 15, 1859. The sale to the defendant upon the Cleveland judgment occurred March 2, 1867.

This question of paramount title turns upon the point as to whether the defendant got a superior legal title by virtue of proceedings to which the plaintiff was not a party. A subsequent judgment creditor sells the property upon which his judgment is a lien, upon execution duly issued. A prior judgment creditor subsequently sells the property under a decree for the enforcement of his judgment lien, to which decree the person in actual possession is alone a party; who gets the better legal title?

It is contended with much force, that although the Milwaukee & Minnesota Company had been let into possession of the road, under the decree in the Bronson and Soutter case and was virtually holding the equity of redemption, yet, as that company was subsequently at the suit of James and others, enjoined from asserting any right or title to the property, because of the fraudulent character of the Barnes mortgage, and as the plaintiff was not a party to the decree upon the Cleveland judgment, and did not have his day in court in that proceeding, the defendant did not acquire superior legal rights by the sale under that decree. If the sale upon the Cleveland judgment had been upon execution, the plaintiff as a subsequent judgment creditor would have had the statutory right and period to redeem, of which he was deprived by the proceeding in equity which was taken. If he had been a party to the proceeding on the Cleveland judgment, he could have been heard to contest that judgment by showing payment or making other defence. These are some of the points urged by plaintiff's counsel, and it is insisted, that as the plaintiff was not a party to the proceeding upon the Cleveland judgment, his rights were not cut off nor affected.

It is to borne in mind here, that we are not dealing with the equities of the parties in interest, but with their strict legal rights. True it may be, that the Barnes mortgage and the proceedings for its foreclosure were, as has been at different stages of the litigation claimed by different parties, including the defendant, fraudulent; I think I must nevertheless treat the Milwaukee & Minnesota Company as a corporation once having an actual existence. It has been so treated by the courts. It was recognized as such in the Bronson and Soutter case, by decree or order of court letting it into possession of the road, and for a period extending from January, 1866, to March, 1867, by permission of the court, it possessed, managed and operated this railroad and property. It was recognized by this court as a corporation in the proceeding upon the Cleveland judgment, and its existence throughout all the litigation was also continuously recognized by the supreme court of the United States. It was the party in possession of the property when the bill on the Cleveland judgment was filed, and when the decree was rendered.

Now suppose a second mortgagee forecloses his mortgage and takes title under his foreclosure sale, but does not take possession. Suppose then a prior mortgagee forecloses his mortgage, does not make the second mortgagee a party, takes title under his foreclosure sale and gets possession. Who has the paramount legal title? Clearly the prior mortgagee, but the second mortgagee's right of redemption is not cut off, because he was not a party to the proceeding. Let us follow it further. Suppose the prior mortgagee forecloses his mortgage, does not make a second mortgagee a party, and gets title under a foreclosure sale. The second mortgagee is in possession holding title under a foreclosure of his mortgage. The paramount title is again in the prior mortgagee, but he cannot have a writ of assistance or other process in his foreclosure proceeding against the second mortgagee to get possession of the premises, because that second mortgagee was not a party to his suit. The equity of redemption of that mortgagee is not cut off, and if the prior mortgagee would

get possession, in case the second mortgagee does not redeem, he must bring ejectment. I mention these only as illustrations of the general principle.

Now a judgment creditor with a posterior lien issues execution, sells the property, and takes title. A prior judgment creditor prosecutes his bill in equity to enforce the lien of his judgment. The party in possession is sole defendant in the bill. A decree is rendered, enforcing not any lien created by the decree, but the lien of the judgment as of the date of the judgment, and a sale is ordered. The sale transpires and then a contest arises upon the legal titles held respectively by the purchaser under the decree and the purchaser under the execution sale upon the subsequent judgment. I cannot come to any other conclusion than that the purchaser under the decree founded upon the first judgment in this state of the case takes the paramount legal title. True, the plaintiff was not a party to the bill filed upon the prior judgment, but the omission to make him a party did not give him superior legal rights. For rank of legal title we must look to the judgments from which the respective titles flow. In settling legal rights we must give him superiority whose lien was first acquired. By omitting to make the plaintiff a party to the bill upon the Cleveland judgment, the plaintiff was not cut off from certain equitable rights which under the law had accrued to him in his position as a subsequent judgment creditor. If when the decree was rendered upon the Cleveland judgment, and when the sale was made under that decree, the plaintiff had been in possession of the premises, he could not have been dispossessed by any writ issued in the equity suit, upon the principle that a writ of assistance cannot go against a stranger to the record in a foreclosure case. The only remedy which the defendant could have resorted to against the plaintiff, had the latter been in possession, would have been ejectment. But it is said the plaintiff lost his right to make the statutory redemption which he could have exercised had the sale upon the Cleveland judgment been made upon execution. This may be true. But certainly a court of equity would have given him the right to redeem. The plaintiff could have filed his bill and if there were no questions involved except priority of lien, a court of chancery must have granted to him the privilege of redeeming. In holding the defendant's legal title paramount, the rule that if subsequent incumbrancers are not made parties, their rights are not bound by the decree, is not transgressed. The proceedings under the Cleveland judgment did not cut off the plaintiff's rights. He stood after that decree as he stood before. No process could run against him on that decree, because he was not a party. But his legal title was all the time held subject to the prior judgment lien. That lien could be made effectual by a sale as ordered, and the sale culminated in a title paramount, because the standing of the titles depends upon the rank in time of the judgment liens, and the purpose to be subserved in making the plaintiff a party would have been to cut off his equity of redemption, and as he was not made a party that equity was not extinguished, and so as to such equity he was left in the position he was in, before the decree upon the Cleveland judgment.

I understand the decision in Terrell v. Allison, 21 Wall. [88 U. S.] 289, to be that process cannot issue to enforce a decree against one not a party to the suit. The purchaser of mortgaged premises was in possession, and was not a party to the foreclosure. The decree provided that the purchaser at the foreclosure sale be let into possession, and a writ of assistance was issued against the person in possession not a party to the foreclosure. It was held that this could not be done, as the party's rights were not affected by the decree. But as the mortgage lien was prior to his purchase, can it be doubted that the purchaser at the foreclosure sale could have maintained ejectment against the occupant, and that his legal title was paramount?

In Hickey v. Stewart, 3 How. [44 U. S.] 750, the heirs of James Mather brought ejectment. The defendants to support their possession relied upon the record in a suit in chancery in which the heirs of Starke were complainants and the heirs of Mather were defendants, in which suit it was decreed that the right to the land was in complainants, and Mather's heirs were ordered to convey to complainants and to deliver to them possession, and the writ of habere facias was awarded. The defendants in the ejectment suit got possession under this decree. But it was held that they could not successfully defend under that decree against the plaintiff's title, the decree giving only an equitable right. This case is cited here in support of the theory that the defendant's interest as purchaser at the sale under the decree upon the Cleveland judgment is only an equitable interest, and that the decree gave only an equitable right which cannot prevail against a legal right. But the whole reason for the ruling of the court in the case of Hickey v. Stewart was that the defendants in the equity suit were not within the jurisdiction of the court when the decree was rendered, could not for that reason be compelled to convey the title to the land, and had not conveyed, and until they should convey according to the decree, the defendants had nothing but an equitable estate under the decree. The doctrine of that case, it seems to me, is not applicable to this, because here the court had jurisdiction of the parties before it, made a decree of sale, and a sale was had and a legal title vested thereby under which the defendant entered upon possession. But it is argued that if the

plaintiff had been made a party to the bill upon the Cleveland judgment, he could have contested that judgment by showing that it had been paid, or was not an existing judgment, or the like, and that he did not have his day in court so to do. He has however his day in court when he comes to try legal titles, and in that contest to defeat defendant's title, may show that the judgment had been paid and so did not exist at all as a basis for the decree, or that the entire proceeding was void and that consequently there is no foundation for the defendant's title.

It is also contended that, although the Milwaukee & Minnesota Company was in possession of the railroad and property when the decree upon the Cleveland judgment was entered, as, at the suit of James, the Barnes mortgage was held fraudulent and that company was enjoined from asserting any right or title to the property, and as that ruling involved the conclusion that the company had no interest in the property, the defendant is estopped now to claim that it had any interest or title which could be acquired by the sale under the decree upon the judgment. This position is taken upon the theory that the sale upon the Cleveland judgment was merely a sale of the supposed interest of the Milwaukee & Minnesota Company in the property, and a sale of that interest alone, it is forcibly urged, could not prevail against an execution sale of the interest of the original judgment debtor on the Howard judgment. But the radical difficulty with this position is, that the defendant's title does not have for its source the supposed interest of the Milwaukee & Minnesota Company in the property. The maintenance of defendant's title does not depend upon a claim that the Milwaukee & Minnesota Company had a valid, transferable interest in the property. Indeed the bill upon the Cleveland judgment asserts affirmatively the fraudulent character of that company's alleged interest and claims. The interest sold upon the James decree relates back to the date of the Cleveland judgment, as the interest sold upon the Howard judgment relates back to its date. The terms of that decree were, that the Cleveland judgment was a lien charge and incumbrance as of the date of October 7th, 1857, upon all the right, title and interest which the La Crosse & Milwaukee Railroad Company had of, in and to the La Crosse & Milwaukee Railroad from Milwaukee to Portage, and a sale was accordingly ordered. The lien enforced by that decree was the lien of the judgment. The sale under the decree passed the actual property covered by the lien and the interest of the company existing at the time of the rendition of the judgment. It was so held by the supreme court on the appeals that were taken in the James case upon the Cleveland judgment.

Justice Nelson says this judgment became a lien on the road from the time of its rendition, and that the sale under the decree in chancery, followed by conveyance and confirmation, passed the whole of the interest of the company existing at the time of its rendition, to the purchaser. Railroad Co. v. James, 6 Wall. [73 U. S.] 750. I do not see therefore, that by standing upon this title, the defendant is claiming as against any previous assertion that the Milwaukee & Minnesota Company had a valid interest in the property sold, nor does that title vest upon such supposed interest. It has its source in the judgment and lien, and not in any title of the Milwaukee & Minnesota Company, nor in the decree rendered upon the judgment; and here I think Chautauque Bank v. Risley, 19 N. Y. 371, is to be distinguished, for there the title rested upon the debtor's own conveyance, made under direction of the court, and had no relation to the judgment. The creditor did not fall back upon his legal remedy, but the title sprang from a conveyance by the debtor to a receiver and then a sale by the receiver. There was, as Judge Comstock says, an abandonment of the prior judgment lien, and the whole title of the defendants came from the conveyance of the debtor himself made by order of a court of chancery, which conveyance could not cut off subsequent judgment liens so as to affect a title acquired under them. But in the case at bar the creditor stood upon his lien although equity was resorted to to enforce it. The judgment and lien, not the conveyance of the party, are the source of title. The remarks I have made in relation to an estoppel arising upon the record in the suit of James v. The Milwaukee & Minnesota Co. [supra] aply to the same question in connection with the record in the case of the defendant against the Milwaukee & Minnesota Company. I do not think the plaintiff has shown a right to recover against the defendants, concluding as I do that the defendant has a paramount title. I will let the testimony offered by the plaintiff and objected to by defendant stand in the case, and must direct a verdict for defendant.

[NOTE. The plaintiff took the case to the supreme court upon a writ of error. where, in an opinion by Mr. Justice Clifford, the decision of the lower court was affirmed. 101 U. S. 837. It was held that the plaintiff was not benefited by the fact that he first enforced his lien. He must show that the prior lien of the defendants had been displaced, or had become inoperative. Priority of lien certainly gave priority of legal right, just as in the case of a first and second mortgage. In view of the decision in Railroad Co. v. James,—6 Wall. (73 U. S.) 750,—the enforcement of the lien under which defendants claimed by proceeding in equity was proper. Process against the plaintiff under that decree could not affect his rights, as he was not a party to the proceeding; consequently, the lien of his judgment still remained in force, and his equity of redemption was not extinguished.]